CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
JUN 01 2006
JOHN F. CORCORAN, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| TERESA L. SIFERS,<br>　　Plaintiff,<br><br>v.<br><br>JO ANNE B. BARNHART,<br>COMMISSIONER OF SOCIAL SECURITY,<br>　　Defendant. | )<br>)<br>)<br>)<br>) Civil Action No. 7:05cv00583<br>)<br>)<br>)<br>) By:　Hon. Michael F. Urbanski<br>)　　　United States Magistrate Judge<br>) |

## REPORT AND RECOMMENDATION

Plaintiff Teresa L. Sifers ("Sifers") brought this action pursuant to 42 U.S.C. § 405(g) for a review of the final decision of the Commissioner of Social Security denying her claim for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. This case was referred to the undersigned Magistrate Judge on January 17, 2006 for report and recommendation. Having reviewed the record, and after briefing and oral argument, the case is now ripe for decision. As the undersigned finds substantial evidence to support the determination that Sifers is not disabled under the Act, it is recommended that the ALJ's decision be affirmed.

I

Plaintiff was born on January 21, 1960, received her GED and completed four years of college. (Administrative Record, hereinafter "R." at 31, 44, 102, 406, 413) Plaintiff's previous work includes that of a social worker and accounting clerk. (R. 31-31, 146, 407, 414) Plaintiff filed an application for DIB on April 22, 2003, alleging she became disabled on January 11,

2002,[1] due to back and neck injuries, as well as numbness in her left leg. (R. 31-32, 127) Plaintiff's claims were denied at both the initial and reconsideration levels of administrative review, (R. 31), and an administrative hearing was held before an administrative law judge ("ALJ") on August 17, 2004. (R. 402-37) On October 14, 2004, the ALJ issued a decision denying plaintiff's claim for DIB, finding plaintiff retained the residual functional capacity ("RFC") to perform light work, limited to lifting no more than ten (10) pounds; standing, walking or sitting up to six (6) hours in an eight (8) hour workday; with the ability to move around and alternate sitting/standing at will. (R. 31)

The ALJ's decision became final for the purposes of judicial review under 42 U.S.C. § 405(g) on July 27, 2005, when the Appeals Council denied plaintiff's request for review. (R. 6-8) Plaintiff then filed this action challenging the Commissioner's decision.[2]

## II

Plaintiff first argues that the ALJ erred by disregarding the opinion of plaintiff's treating physician, Dr. Rebecca Tanner Whitesell, that plaintiff is disabled. Plaintiff also alleges the ALJ failed to take into consideration evidence from occupational therapist Elizabeth McCoy, which plaintiff claims establishes that she must lie down during the day. Finally, plaintiff claims the

---

[1] In her disability application, plaintiff alleged an onset date of January 11, 2002. (R. 127) However, the ALJ expressed some doubt that plaintiff's impairments prevented her from functioning at a level of substantial gainful employment beginning in January, 2002, as plaintiff's records indicate she earned $2,300.26 in 2002 and $4,494.31 in 2003. (R. 32) Plaintiff, in her brief, alleges an onset date of April 4, 2003. (Pl.'s Br. 1)

[2] At oral argument, plaintiff's counsel indicated that plaintiff recently has been able to return to work as a social worker. Thus, her claim for DIB benefits is for a closed period of time, dating from April 4, 2003 until her recent resumption of work as a social worker.

2

ALJ erred in his credibility determination, and failed to consider the testimony of plaintiff's family members regarding her limitations.

The court's review is limited to a determination as to whether there is substantial evidence to support the Commissioner's conclusion that plaintiff failed to meet the conditions for entitlement established by and pursuant to the Act. If such substantial evidence exists, the final decision of the Commissioner must be affirmed. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966). Stated briefly, substantial evidence has been defined as such relevant evidence, considering the record as a whole, as might be found adequate to support a conclusion by a reasonable mind. Richardson v. Perales, 402 U.S. 389, 401 (1971).

### III

Plaintiff first contends that the ALJ failed to give controlling weight to the opinion of her treating physician, physiatrist Rebecca Tanner Whitesell, M.D. Sifers treated with Dr. Whitesell after she was injured in an automobile accident on August 18, 2000. (R. 407) The record indicates Sifers saw Dr. Whitesell on January 5, 2001, complaining of low back and left leg pain, as well as increased right hip pain. (R. 298) Examination revealed decreased sensation in the right lateral hip down the L3-L4 dermatome distribution. (R. 298) Motor strength was 4/4+ in the proximal right hip and 5/5 in the left hip and tibialis anterior. (R. 298) Given the recurrence of plaintiff's symptoms and impact of the motor vehicle accident she suffered in August, 2000, Dr. Whitesell recommended a lumbosacral MRI without contrast. Plaintiff returned on January 15, 2001, rating her pain as a seven (7) or eight (8) on a scale of ten (10). (R. 296) Examination revealed limited movement in the lumbar range of the right hip, sensitivity over the right L4-L5

3

paraspinals, and decreased deep tendon reflexes in the right Achilles at 1+. (R. 296) MRI notes of January 12, 2001 showed moderate right paracentral disc at L5-S1 with some central and biforaminal stenosis as well as hypertrophy at L4-L5. (R. 296)

In a follow-up visit on February 9, 2001, Dr. Whitesell noted plaintiff had pain in the left lateral leg with dysesthesias, which seemed to be shrinking over the tibialis surface. (R. 293) Dr. Whitesell planned to focus treatment on additional soft tissue triggers and contusions in the right lateral hip and left tibialis anterior to see if the dysesthesias could be reduced, but noted Sifers would continue to suffer flare-ups with decreased intensity over the next six (6) to nine (9) months. (R. 293) On that visit, Dr. Whitesell reported plaintiff should be able to lift twenty-five (25) pounds discontinuously, as well as drive unrestrictedly and work at full duty. (R. 293) On April 6, 2001, plaintiff complained of triggers and soreness in her medial calf, right lateral leg, hip, and low back, which limited her bending and twisting, but otherwise reported she was able to complete household duties and drive. (R. 292) Though she had sensory loss in the left anterior calf, she had full hip range of motion. (R. 292) She was diagnosed with a lumbosacral strain, hip and thigh contusions, and left peroneal neuropathy. (R. 292)

Plaintiff returned on April 27, 2001 with pain she rated as a seven (7) out of ten (10). (R. 291) Her lumbar range was still restricted in extension and in the left lateral bend by ten (10) to fifteen (15) degrees. (R. 291) Some nodular resolving hematoma in the left medial calf was noted, but her midline pain was minimal L4-5 and L5-S1, and motor sensory deep tendon reflexes were unchanged. (R. 291) On May 11, 2001, straight leg testing was negative. (R. 289) Tenderness in the left tibial and calf region had improved and motor sensory deep tendon

4

reflexes remained unchanged. (R. 289) Sifers was diagnosed with low back pain, as well as a disc bulge and disc protrusion at L4-5 and L5-S1. (R. 289)

After an epidural, plaintiff reported nearly forty percent (40%) improvement in her low back and right hip pain on July 26, 2001. (R. 286) On August 30, 2001, plaintiff was tender in the midline L3 through L5-S1, but straight leg testing was negative and strength testing was 5/5 bilaterally. (R. 284) Dr. Whitesell diagnosed her with chronic low back pain, degenerative discs at L4-5 and L5-S1 with facet hypertrophy and stenosis at L4-5. (R. 284) Though plaintiff complained of numbness in her left foot, Dr. Whitesell noted it was due to tibial contusion and residual numbness myofascial pain, as plaintiff had not had true radiating leg pain since she began treatment. (R. 284) In September of the same year, Dr. Whitesell discontinued plaintiff's steroid injections after she experienced a drastic weight change over three (3) months. (R. 282) The doctor's impression was again chronic low back pain, with left chronic disc protrusion at L5-S1 on the right and L4-5 facet hypertrophy with moderate canal stenosis. (R. 282) On October 8, 2001, plaintiff reported an escalation of her symptoms, and Dr. Whitesell issued her a work release for three (3) weeks. (R. 280) At the end of the month, on October 25, 2001, plaintiff stated her symptoms had improved over the past week or two. (R. 278) Examination revealed improved range of motion, negative straight leg testing, and full reflexes. (R. 278)

A study conducted on March 12, 2002 showed evidence of acute L5 radiculopathy on the right, coinciding with bilateral chronic L5-S1 radiculopathy. (R. 272) Residual left peroneal neuropathy was evident in reduced amplitudes; peroneal motor was slightly improved from the past year's examination. (R. 272) In November of 2002, plaintiff was diagnosed with chronic lumbosacral and right hip pain, L5-S1 radiculopathy, L4-5 degenerative disc disease with

5

stenotic area, and chronic cervicothoracic pain related to low back symptoms. (R. 267) A progress note from April 22, 2003 stated plaintiff could work a sedentary job, alternating sitting and standing. (R. 233) Dr. Whitesell recommended plaintiff refrain from lifting or driving for more than thirty (30) minutes. (R. 233) In a letter written the same day, Dr. Whitesell stated plaintiff is not a malingerer. (R. 354) On July 7, 2003, plaintiff's neuromuscular examination was essentially unchanged. (R. 288) Dr. Whitesell observed that gastric bypass surgery might considerably improve plaintiff's back and leg pain. (R. 288) In a prescription note of September 25, 2003, the doctor remarked plaintiff was "unable to work due to [lower back pain]/ radiculopathy." (R. 260) No clinical findings accompanied this note.

On August 17, 2004, Dr. Whitesell wrote a letter in response to plaintiff's counsel's request for a professional opinion regarding Sifers' disability claim. (R. 21-22, 330-31, 358-59) Dr. Whitesell opined that plaintiff had improved to the point where she could sit, stand and walk intermittently for an eight (8) hour period, provided she be permitted to change her position when needed. (R. 21, 330, 358) Additionally, Dr. Whitesell stated plaintiff could not do repetitive lifting, lift any weight over ten (10) pounds, or drive longer than one (1) hour at a time. (R. 21, 330, 358) The doctor then noted such restrictions had limited Sifers' ability to secure a job in her area, resulting in permanent disability "from work within her local area." (R. 22, 331, 359)

The Fourth Circuit gives great weight to the opinion of a treating physician, for such opinion reflects expert judgment based on continuous observation of a patient's condition over a prolonged period of time. Smith v. Schweiker, 795 F.2d 343, 345-46 (4th Cir. 1986); Mitchell v. Schweiker, 699 F.2d 185, 187 (4th Cir. 1983). However, the Commissioner is not bound by a treating physician's opinion. Mitchell, 699 F.2d at 187. The treating physician rule does not

6

require that the testimony of a treating physician be given controlling weight. Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) (citing Campbell v. Brown, 800 F.2d 1247, 1250 (4th Cir. 1986)). The ALJ may choose to give less weight to the testimony of a treating physician if there is persuasive contrary evidence. Foster v. Heckler, 780 F.2d 1125, 1127 (4th Cir. 1986). If a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight. Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996).

Plaintiff claims the ALJ failed to give controlling weight to Dr. Whitesell's finding of disability in the August 17, 2004 letter. (Pl.'s Br. 5) The problem with plaintiff's argument is that Dr. Whitesell's August, 2004 letter does not state that plaintiff is disabled from all work. Instead, Dr. Whitesell clearly states that plaintiff can work, given certain restrictions. The doctor notes plaintiff's condition had "improved to the point where she can sit, stand and walk intermittently for an eight hour period provided she is permitted the flexibility to change her position when discomfort dictates." (R. 21, 330, 358) Dr. Whitesell outlined a number of limitations plaintiff would need to observe on the job, including standing or walking no more than three (3) hours in an eight (8) hour workday, the need to intermittently change her position, especially after sitting consistently for thirty (30) minutes to one (1) hour, and refraining from repetitive reaching, crawling, squatting, and physically lifting/handling children as she did as a social worker. (R. 21, 330, 358)

The ALJ's RFC determination coincides with Dr. Whitesell's opinion as to plaintiff's functional capacity, outlined in her August 17, 2004 letter. The ALJ found plaintiff capable of lifting no more than ten (10) pounds occasionally, standing/walking/sitting up to six (6) hours in

7

an eight (8) hour workday, with the ability to move around and alternate sitting and standing at will. (R. 44, 46) The ALJ restricted plaintiff even more than recommended by the state agency physicians. (R. 252) While state agency physicians found plaintiff capable of lifting twenty (20) pounds occasionally, and standing or walking at least two (2) hours and sitting six (6) hours in a workday, (R. 252), the ALJ restricted plaintiff to carrying no more than ten (10) pounds and gave her the flexibility to change positions, and sit or stand at will. (R. 44, 46)

On brief and at oral argument, plaintiff made much of the fact that the second page of Dr. Whitesell's August 17, 2004 letter states plaintiff is disabled from all work in her area. Dr. Whitesell wrote: "It is my professional opinion that the above-mentioned limitations have resulted in her inability to secure a job in her area. Therefore, she is disabled permanently from work within her local area." (R. 22, 331, 359) Dr. Whitesell does not opine that plaintiff is disabled from all work. On the contrary, the first page of her letter clearly states plaintiff can work with certain restrictions. As a result of those restrictions, Dr. Whitesell notes plaintiff has been unable to secure a job "in her area." (R. 22, 331, 359) It is unclear what the words "in her area" are intended to mean; however, use of the words "within her local area" in the last line of the letter signify "area" is meant in the regional sense.

Vocational experts, not medical doctors, are employed by the Commissioner to opine as to whether a claimant can perform work that exists in significant numbers in the national economy. 20 C.F.R. § 404.1566. A vocational expert testified at Sifers' administrative hearing as to the jobs plaintiff can perform given her limitations. Based on the ALJ's determination of Sifers' RFC, which is consistent with Dr. Whitesell's determination, the vocational expert testified that plaintiff could perform work as a receptionist, information clerk, general office

clerk, and surveillance system monitor, all of which exist in significant numbers in both the regional and national economies. (R. 434-36)

Plaintiff also contends that the ALJ failed to even address Dr. Whitesell's August 17, 2004 letter in his opinion and gave no explanation for ignoring the document. Yet, the ALJ did, in fact, address the opinion rendered in the August, 2004 letter, both in his factual recitation, (R. 38), and in the discussion regarding plaintiff's RFC. (R. 43) In the midst of acknowledging Dr. Whitesell's September, 2003 prescription pad notation that plaintiff is "unable to work due to [lower back pain]/chronic radiculopathy," (R. 43, 260), the ALJ stated:

> The physiatrist, Dr. Rebecca Tanner-Whitesell's opinion written on a prescription note that the claimant is disabled (Exhibit 10F), has been considered. Although she is a treating source by virtue of having treated the claimant on an ongoing basis, her opinion that the claimant is "disabled" is an opinion on an issue that is reserved to the Commissioner and, thus, is never entitled to controlling weight or special significance. This opinion of the treating physiatrist is contradicted and superceded by the other records of Dr. Whitesell's treatment of the claimant (Exhibits 16F and 18F) and is inconsistent with the physical capacities assessment by Dr. Whitesell.

(R. 43) Exhibits 16F and 18F, referred to by the ALJ in this passage, are copies of the August 17, 2004 letter from Dr. Whitesell to plaintiff's counsel. Thus, the ALJ specifically considered the letter in his RFC determination, despite plaintiff's claims to the contrary. As the ALJ mentions this letter in contradistinction to Dr. Whitesell's September, 2003 prescription pad note stating plaintiff is unable to work, the ALJ clearly did not interpret Dr. Whitesell's letter to mean plaintiff is disabled from all work.

Even if Dr. Whitesell did opine that plaintiff is disabled, a statement by a medical source that a claimant is "disabled" or "unable to work" does not require that the Commissioner find

9

plaintiff to be disabled under the Act. 20 C.F.R. § 404.1527(e)(1)-(3). The determination of disability is reserved to the Commissioner. Id. Furthermore, a finding of disability by Dr. Whitesell would not be entitled to controlling weight under the treating physician rule, because such a finding would be inconsistent with both Dr. Whitesell's clinical findings as well as other evidence of record.

Dr. Whitesell outlined plaintiff's abilities in terms of lifting, sitting, standing and walking in her August 17, 2004 letter to plaintiff's counsel. (R. 21-22, 330-31, 358-59) Dr. Whitesell also remarked on April 22, 2003 that plaintiff could work a sedentary job if she could alternate sitting and standing, and refrain from lifting and driving more than thirty (30) minutes. (R. 233) In a January 2001 visit, Dr. Whitesell opined that plaintiff could work at her current level, restricted to lifting fifteen (15) pounds or less, but with no driving restriction. (R. 297) In February of the same year, Dr. Whitesell stated plaintiff should be able to lift twenty-five (25) pounds discontinuously, and released her to full work duty without driving restrictions. (R. 293) On April 27, 2001, Dr. Whitesell restricted plaintiff to lifting no more than twenty-five (25) pounds and no highway driving at work. (R. 291) Dr. Whitesell repeatedly noted plaintiff could work within certain limitations.

In addition, Dr. Joiner noted in an assessment on March 13, 2002 that no objective pathology precluded Sifers from returning to her job as a social worker. (R. 216) Dr. Joiner recommended plaintiff obtain a functional capacity evaluation, which was completed by occupational therapist Wendy Lucas on April 23, 2002. Ms. Lucas' evaluation found plaintiff could perform sedentary to light work, eight (8) hours per day, but Ms. Lucas restricted plaintiff to lifting no more than twenty (20) pounds. (R. 183-97) Based on the findings of Ms. Lucas in

10

the functional capacity evaluation, Dr. Joiner released plaintiff back to her job as a social worker on May 23, 2002. (R. 193) Furthermore, in a letter to counsel on August 10, 2004, Dr. Riebel stated no objective evidence supports plaintiff's disability claim, and her claim is based solely on her complaints of pain. (R. 326)

Plaintiff's daily activities do not support a finding of disability. Plaintiff is able to do daily chores, including cooking, laundry and the dishes. (R. 156, 157, 172) She goes outside five (5) times per day, paints her lawn ornaments, and waters her plants. (R. 156) She attends water therapy at the YMCA, runs errands, shops and reads. (R. 156-58, 173) In addition, she visits her elderly mother at least once per week. (R. 159, 174)

In short, the treating physician rule does not require reversal or remand of this case. Contrary to plaintiff's assertions, the ALJ did in fact properly rely on Dr. Whitesell's opinion, in which she stated plaintiff could work with certain restrictions. Had Dr. Whitesell opined plaintiff was disabled, such an opinion would be inconsistent with the evidence of record. Substantial evidence supports the ALJ's finding that plaintiff is not disabled.

## IV

Plaintiff also claims the ALJ erred at Step 5 by finding the Commissioner had met her burden of establishing plaintiff could perform jobs that exist in significant numbers in the national economy. Plaintiff argues that medical evidence from Elizabeth McCoy, O.T.R., establishes that plaintiff must lie down during the day, and the vocational expert testified that under such circumstances, all work would be precluded.

At the administrative hearing, plaintiff's counsel asked vocational expert J. Herbert Pearis the following:

11

> ATTY: Mr. Pearis, we are operating, unfortunately, with less than a full deck as far as the medical proof is concerned, so I guess we are limited somewhat in the way the hypothetical can be considered. But if the medical evidence eventually demonstrates that in addition to what's been said here today she is – she needs to not only alternate on a fairly frequent basis between sitting and standing but that she also has to lie down for substantial periods of time each day because of the pain problems with her back, what would that do to your responses to the Judge's questions?
>
> VE: That would preclude all work.

(R. 436) At the conclusion of the testimony, the ALJ left the record open for one (1) month to allow plaintiff to submit additional evidence. (R. 436) Plaintiff submitted a functional capacity evaluation from Elizabeth J. McCoy, O.T.R. (R. 361-66) In this evaluation, Ms. McCoy found plaintiff's capacity to be within the general category of light work with certain limitations as noted in the report grid, and she stated that plaintiff needed the ability to frequently change positions. (R. 362) In response to the question of "whether or not it is reasonable for Ms. Sifers to lie down for substantial periods of time during the day, because of her pain and functional loss," as posed by plaintiff's counsel in a letter, Ms. McCoy responded in her evaluation summary:

> In response to an inquiry from William Wilson of Wilson, Updike & Nicely law offices (see attached letter), it was my objective findings [sic] that Ms. Sifers would need frequent rests to complete a work day. Lying down would be the most optimum situation since her areas of instability and weakness are her trunk stability and bilateral leg weakness.

(R. 362) Based on this response, plaintiff claims the ALJ erred by not adopting the vocational expert's testimony that plaintiff would be precluded from all work should she need to lie down during the day.

12

However, Ms. McCoy did not state that plaintiff is required to lie down during the day. Instead, Ms. McCoy found that plaintiff can perform light work with certain restrictions, and that she would need frequent rests to complete a workday. (R. 362) Ms. McCoy stated that *optimally*, plaintiff should be able to lie down, not that plaintiff *must* lie down. The ALJ found that plaintiff could perform a limited range of light work, with the ability to change positions at will. Thus, the ALJ provided plaintiff a break from prolonged periods of sitting, standing, or walking by giving her the flexibility to change positions at will. The ALJ's determination of plaintiff's functional capacity is entirely consistent with Ms. McCoy's.

It is well established that in order for a vocational expert's testimony to be relevant or helpful, it must be based upon consideration of all evidence in the record, and it must be in response to a proper hypothetical question which fairly sets out all of the claimant's impairments. Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). The existence and extent of those impairments is a matter to be decided by the ALJ, and will be upheld by the court if supported by substantial evidence. Wells v. Chater, No. 94-2186, 1995 U.S. App. LEXIS 17252, at *4-5 (4th Cir. July 7, 1995). The Commissioner may not rely upon the vocational expert's answer to a hypothetical question if the hypothesis does not fit the facts. Swaim v. Califano, 599 F.2d 1309, 1312 (4th Cir. 1979).

As the evidence in this case does not establish that plaintiff must lie down during the day, the hypothetical question need not include such a limitation. No doctor opines that plaintiff must lie down. To the extent Ms. McCoy's opinion can be read in such a way, Ms. McCoy is not an acceptable medical source as defined by the regulations, 20 C.F.R. § 404.1513(a)(1)-(5), and therefore, she cannot provide evidence to establish an impairment. The ALJ is not required to

13

include "optimal" circumstances in his hypothetical. The hypothetical posed to the vocational expert in this case fairly set out plaintiff's impairments as established in the record. The ALJ's determination that plaintiff can perform work that exists in significant numbers in the national economy is supported by substantial evidence.

V

Finally, plaintiff argues that the ALJ erred in finding the plaintiff's testimony as to her limitations incredible. Plaintiff claims the ALJ offered no basis for this finding and ignored the hearing testimony of Sifers' family members as to her impairments.

The ALJ thoroughly discussed his reasons for discounting plaintiff's credibility as to her complaints over a number of pages in his opinion. (R. 41-43) The ALJ examined plaintiff's complaints of pain in light of objective medical evidence of record, (R. 42), her daily activities, (R. 43), and the findings of the state agency physicians. (R. 44) The record evidence in this case simply does not support plaintiff's complaints of pain and physical limitation. See discussion supra §§ III, IV. Wendy Lucas, P.T., summarized plaintiff's subjective complaints as follows:

> Subjectively, Ms. Sifers reports almost total inability to sit, stand, sleep, walk, get out of bed, or do any activity, yet clearly with testing today, she tolerated almost 2 hours of sitting with a decrease in her reported pain levels and no adverse changes in her physical exam. In fact, Ms. Sifers' objective physical exam does not show any overwhelming physiological changes other than her self-imposed range restrictions....

(R. 185) This view of plaintiff's subjective limitations is corroborated by both medical evidence and plaintiff's daily activities. Plaintiff's doctors repeatedly released her to work with certain restrictions. (R. 21, 193, 233, 291, 293, 297, 330, 358) Both Dr. Joiner and Dr. Riebel stated no objective evidence supports plaintiff's claim that she cannot work. (R. 216, 326) Plaintiff has

14

received two (2) functional capacity evaluations, both of which state she can work at the light level with certain restrictions. (R. 183-97, 361-66) Plaintiff's daily activities also suggest her complaints of pain are incredible. She is able to spend time outdoors painting and watering plants. (R. 156) She drives herself around town to grocery shop, visit the doctor, run errands and visit her mother. (R. 156-59, 174) She also attends water aerobics at the YMCA and does daily chores. (R. 156-57)

The ALJ went to great lengths in his opinion to discuss the medical evidence and plaintiff's daily activities in the context of determining plaintiff's credibility and RFC. (R. 41-43) The ALJ's RFC finding actually reflects his belief that plaintiff does suffer from some pain and limitations, as he found she could perform only a limited range of light work, restricting her to lifting no more than ten (10) pounds with the flexibility to change positions at will. The ALJ's RFC determination was more limited than that determined by the state agency physicians, indicating the ALJ took into consideration plaintiff's subjective complaints of pain. The ALJ's credibility determination is supported by substantial evidence in the record.

In his opinion, the ALJ also referenced the testimony of plaintiff's daughters, Charity Entsmenger and Carrie Brown, who stated that plaintiff is unable to work physically and that plaintiff lies down during the day. (R. 40) The ALJ summarized the testimony of plaintiff's mother, Lawrence Ayers, who stated Sifers is in pain and is incapable of working. (R. 40) The ALJ noted "[i]n assessing the claimant's residual functional capacity, consideration must be given to the medical evidence *and testimony* including subjective allegations." (R. 41) (emphasis added) The ALJ clearly weighed the witnesses' testimony. It was not necessary for the ALJ to specifically evaluate the credibility of each of plaintiff's witnesses, as the testimony of Sifers'

mother and daughters were essentially the same as plaintiff's own. Lorenzen v. Chater, 71 F.3d 316, 319 (8th Cir. 1995); Carlson v. Shalala, 999 F.2d 180, 181 (7th Cir. 1993). The evidence of record does not support the limitations claimed by plaintiff, and the ALJ properly outlined his reasons for finding such.

## VI

Based on the foregoing, it is the recommendation of the undersigned that plaintiff's motion for summary judgment be denied and defendant's motion for summary judgment be granted.

In making this recommendation, the undersigned does not suggest that plaintiff is totally free of all pain and subjective discomfort. The objective medical record simply fails to document the existence of any condition which would reasonably be expected to result in total disability for all forms of substantial gainful employment. It appears that the ALJ properly considered all of the objective and subjective evidence in adjudicating plaintiff's claim for benefits. It follows that all facets of the Commissioner's decision in this case are supported by substantial evidence. It is recommended, therefore, that defendant's motion for summary judgment be granted.

The Clerk is directed immediately to transmit the record in this case to the Hon. James C. Turk, United States District Judge. Both sides are reminded that pursuant to Rule 72(b) they are entitled to note any objections to this Report and Recommendation within ten (10) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or

16

findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection.

The Clerk of the Court hereby is directed to send a certified copy of this Report and Recommendation to all counsel of record.

**ENTER:** This 1st day of June, 2006.

Michael F. Urbanski
United States Magistrate Judge